# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: A.F.

No. 17-0251 (Raleigh County 15-JA-144-B)

**FILED**

**June 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.M., by counsel Dennie S. Morgan, Jr., appeals the Circuit Court of Raleigh County's February 9, 2017, order terminating her parental rights to A.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Thad A. Bowyer, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent, admitting medical records for purposes of adjudication, and basing part of its ruling upon testimony of facts not contained in the abuse and neglect petition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2015, the DHHR filed an abuse and neglect petition against petitioner alleging that she and A.F. were involved in a car accident, while M.M was under the influence. According to the petition, petitioner tested positive for opiates, benzodiazepine, tetrahydrocannabinol ("THC"), and cocaine after the car accident. As a result of the accident, petitioner was also charged criminally with neglect creating risk of harm to the child, driving while under the influence ("DUI"), and having no license or proof of insurance. Petitioner thereafter waived her right to the preliminary hearing.

In March of 2016, the circuit court held an adjudicatory hearing wherein the DHHR called the director of laboratory services from the Raleigh County General Hospital to testify as

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

to the authenticity of petitioner's medical records. Petitioner stipulated to the authenticity of the medical records but objected to the director's testimony based on her contention that there had "not been a proper chain of custody [of the medical records] [established] to this point." The circuit court allowed the DHHR to continue its presentation of evidence and, following the director's testimony, found that the evidentiary foundation for the records was sufficient to establish a chain of custody. The director also testified that petitioner's medical records indicated that, on the night of the car accident, a drug screen was administered and petitioner tested positive for opiates, benzodiazepine, THC, and cocaine. The director further testified that the drug screen was administered for the purposes of treatment at the hospital and to avoid possible harmful prescription drug interactions. Petitioner moved the circuit court to exclude the director's testimony. The circuit court overruled her objection and granted the DHHR's motion to make the test results a part of the adjudicatory record. The officer who first arrived on the scene of the accident testified that petitioner's eyes were bloodshot and her speech was slurred immediately following the accident. According to the officer's testimony, petitioner admitted to the officer that she consumed marijuana and Xanax. As a result of her admissions, the officer charged petitioner with child neglect creating risk of injury, in addition to other crimes. Following the presentation of the evidence, the circuit court adjudicated petitioner as an abusing parent and found that the child was abused because petitioner operated her vehicle "in a manner that endangered the child." The circuit court found that petitioner had ingested multiple substances that impaired her "judgement in the operation of a vehicle." The circuit court also granted petitioner's request for a post-adjudicatory improvement period.

In February of 2017, the circuit court held a review and dispositional hearing. Petitioner did not appear at this hearing but was represented by counsel. A DHHR worker testified that the DHHR was seeking the termination of petitioner's parental rights based on her failure to participate in her improvement period or visit the child. Based on the evidence presented, by order dated February 9, 2017, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and terminated her parental rights to the child.[2] It is from that February 9, 2017, order that petitioner appeals.

---

[2]According to the guardian, A.F.'s putative father, J.F., has not appeared before the Circuit Court of Raleigh County or submitted to paternity testing to establish his parental rights. The DHHR intends to request the termination of the parental rights of all unknown fathers. The guardian states that A.F. was placed in a foster home. The permanency plan is adoption into that home pending the termination of the parental rights of all unknown fathers. Because the putative father's parental rights are unresolved, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

(continued . . . )

2

The Court has previously established the following standard of review in a case such as this one:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

3

Syl. Pt. 1, in part, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's adjudication of petitioner or the termination of her parental rights.

Petitioner argues on appeal that the circuit court erred in adjudicating her as an abusive parent because there was not sufficient evidence to make the finding "by clear and convincing evidence." This Court does not agree. West Virginia Code § 49-4-601

> requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden.

Syl. Pt. 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981). We have described the "clear and convincing" standard as one in which

> the evidence in an abuse and neglect case does not have to satisfy the stringent standard of beyond a reasonable doubt; the evidence must establish abuse by clear and convincing evidence. This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Brown v. Gobble,* 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)

*In re F.S. and Z.S.*, 233 W.Va. 538, 546, 759 S.E.2d 769, 777 (2014). The evidence below was sufficient to establish that petitioner abused her child. Here, the DHHR clearly established that petitioner's substance abuse and resulting impairment led to a car accident as alleged in the abuse and neglect petition. During the proceedings below, the circuit court heard testimony that petitioner tested positive for opiates, benzodiazepine (Xanax), THC, and cocaine on the night of the car accident and admitted to an officer that she consumed marijuana and Xanax. Further, that officer testified that petitioner exhibited bloodshot eyes and slurred speech immediately after the car accident and he charged her with child neglect creating risk of injury, in addition to other crimes. For these reasons, we find no error in the circuit court's adjudication of petitioner as an abusing parent.

Petitioner next argues that the circuit court erred in admitting her medical records as they relate to the drug screens that were administered the night of the accident. Petitioner contends that the medical records were "not properly authenticated," "unreliable," and irrelevant to the proceedings below. We disagree. Rule 901 of the West Virginia Rules of Evidence addresses the authentication of evidence and provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." We must first note that petitioner, as she admits in her brief, stipulated to the authenticity of the medical records at the adjudicatory hearing. As such, petitioner agreed that the medical records were, in fact, what they purported to be: a record of petitioner's medical history.

4

Petitioner also argues that the director's testimony regarding the drug screen was unreliable because the director "lacked personal knowledge of the matter." We disagree. Rule 602 of the West Virginia Rules of Evidence provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." In the instant case, the director had personal knowledge regarding the practices and procedures of administering a drug screen and the collection of the resulting sample. She testified that the nurse assigned to petitioner that night administered the drug screen and delivered the resulting urine sample to the director's laboratory for testing. The director also testified that the drug screens are ordered by the treating physician in order to treat the patient and avoid harmful drug interactions. As such, we find no error in the circuit court's admission of petitioner's medical records. Inasmuch as petitioner is arguing that the director was not a credible witness with regard to petitioner's medical records, we have held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997).

Petitioner further argues that the director's testimony regarding her medical records was irrelevant and precluded by the West Virginia Rules of Evidence. Petitioner contends that the drug screen evidence is "misleading, unfairly prejudicial, and confusing" and inadmissible under Rules 401 and 403 of the West Virginia Rules of Evidence. In support of her argument, petitioner asserts that no confirmation testing was performed on the drug screen results and that the drug screen was administered for medical treatment and not for the purposes of determining impairment. We disagree. Pursuant to Rule 401(a) of the West Virginia Rules of Evidence, "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence." Additionally, Rule 403 of the West Virginia Rules of Evidence provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Petitioner's argument ignores the fact that petitioner's positive drug screen was not the only evidence that she was impaired and abusing substances when the car accident occurred. Petitioner admitted to the officer immediately after the car accident that "she may have marijuana or maybe Xanax in her blood as well" in addition to "one Percocet tablet" she took the same day. The officer also observed petitioner's bloodshot eyes and slurred speech. The testimony regarding the drug screen administered at the hospital merely confirmed the evidence already before the circuit court at adjudication. As such, we find no error in the circuit court's admission of petitioner's medical records.

Finally, petitioner argues on appeal that the circuit court erred when it based part of its adjudication upon testimony of facts not contained in the abuse and neglect petition. Petitioner argues, without citation to any law in support of her contentions, that the DHHR cannot allege "facts and assertions in a [p]etition, then at [a]djudication prove a whole new set of allegations without having lawfully amend[ing] their [p]etition." According to petitioner, "this is exactly what happened in this case." We disagree. Pursuant to West Virginia Code § 49-4-601(b), "[t]he petition shall allege specific conduct including time and place, how the conduct comes within the

5

statutory definition of neglect or abuse with references thereto, any supportive services provided by the department to remedy the alleged circumstances and the relief sought."

Here is it clear from the record that the DHHR alleged in the abuse and neglect petition that petitioner and A.F. were involved in a car accident; that petitioner tested positive for opiates, benzodiazepine, THC, and cocaine after the car accident, and that petitioner was criminally charged with neglect creating risk of harm to the child. As previously stated, the DHHR established, as it alleged in the petition, that petitioner's substance abuse and resulting impairment led to a car accident and her criminal charge of child neglect creating risk of injury. Based on the evidence presented at adjudication, the circuit court adjudicated petitioner as an abusing parent and found that the child was abused because petitioner operated her vehicle "in a manner that endangered the child." As such, we find no error in the circuit court's adjudication of petitioner.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 9, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: June 19, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

6